IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Franklin RICHARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11-cv-784 (AJT/JFA) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

The Plaintiff, a federal employee, was exposed to toxic levels of lead in connection with his employment and as a result suffered permanently disabling lead poisoning. Presently before the Court is defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction.  For the reasons stated herein, the Court will grant that motion in this troubling and tragic case.

For the purposes of the pending motion, and based on the allegations of the Complaint, the Courts accepts as true the following facts, together with all reasonable inferences therefrom:

Plaintiff Franklin Richards ("Richards") was an employee of the Central Intelligence Agency ("CIA") from 1990 until 2006. While serving as Deputy Chief in the Special Activities Division in 2003, he was instructed to conduct weapons training in a Middle Eastern country. The firing range facility where he was assigned was unsafe and unsuitable for firearms training because millions of rounds of ammunition had been discharged there with little to no clean up or maintenance of the facility. The entire range was covered in a layer of lead dust that was highly toxic.

1

Richards's supervisor, Defendant Gordon P., instructed Richards to clean the facility and use it as the training location despite Richards's protestations that it was unsafe. Gordon P. rejected suitable alternative locations and rejected suggestions on how to make the selected location safer. Facing direct orders to use the unsafe facility, Richards trained individuals there instead of at a safer location. The consequences for Richards were devastating.  Due to his exposure to dangerous levels of lead, Richards contracted lead poisoning. CIA doctor Brian H. compounded the consequences of Richards's exposure by misdiagnosing the disease and delaying proper treatment. Due to the delay, the window for properly treating the lead poisoning closed and Richards now suffers from severe, debilitating medical problems.  The neurological damage that resulted is so extensive that Richards is not capable of maintaining a job that involves anything but menial tasks. While Richards was on medical leave, the CIA disclosed confidential and embarrassing medical and other information about Richards and his condition to other employees. Many employees and former employees of the CIA still discuss this confidential information; and as a result of the disclosures, Richards "has suffered adverse and harmful effects, including . . . mental distress, emotional trauma, embarrassment, humiliation, a worsening of his depression, and a lost or jeopardized present or future financial opportunities."

Based on the above allegations, Richards filed this action against defendants CIA, CIA Director Leon Panetta in his capacity as director, Gordon P., and Dr. Brian H.  His claims include (1) *Bivens* claims against Gordon P. and Dr. Brian H. for violations of the Fifth Amendment Due Process Clause and (2) a claim against the CIA under the Privacy Act, 5 U.S.C. §§ 552a(b) and (g)(1)(D) for the allegedly unlawful disclosures of personal information. The defendants have moved to dismiss on the grounds, among others, that the Federal Employees Compensation Act ("FECA") precludes Richards's claims because FECA provides the exclusive

2

remedy for injuries that occur in the federal workplace. For the reasons stated below, the Court concludes that both the *Bivens* claims and the Privacy Act claim are precluded by the exclusivity provision of FECA.

(1) The *Bivens* claims.[1]

In order for a party to proceed with a *Bivens* action, a court must determine "that (1) Congress has not already provided an exclusive statutory remedy; (2) there are no 'special factors counseling hesitation in the absence of the affirmative action by Congress'; and (3) there is no 'explicit congressional declaration' that money damages not be awarded." *Hall v. Clinton,* 235 F.3d 202, 204 (4th Cir. 2000) (quoting *Bivens,* 403 U.S. at 396-97). The defendants argue that these considerations preclude a *Bivens* action, particularly because FECA, by its express terms, created an alternative exclusive remedial scheme for relief.  In response, Richards argues that his constitutionally-based *Bivens* claims cannot be precluded by statute and also that FECA is not an adequate alternative remedy to his *Bivens* claims. Applying the relevant considerations to the facts of this case, the Court concludes that the *Bivens* claims are precluded by the plaintiff's remedy under FECA.

First, FECA, on its face, appears to provide an exclusive remedy with respect to the conduct alleged as the basis for the *Bivens* claims. In this regard, 5 U.S.C. § 8116(c) provides in pertinent part:

---

[1] In *Bivens*, the Supreme Court recognized an implied damages remedy for injuries arising out of a violation of a person's Fourth Amendment rights. *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971). The Supreme Court later expanded *Bivens* to include a damage remedy for Fifth Amendment Due Process Clause violations, *Davis v. Passman,* 442 U.S. 228 (1979), and Eighth Amendment Cruel and Unusual Punishment Clause violations, *Carlson v. Green,* 446 U.S. 14 (1980). However, the Court has resisted further extensions of *Bivens*. *See Holly v. Scott,* 434 F.3d 287, 290 (4th Cir. 2006) (Courts have resisted extending the *Bivens* remedy because Congress "is in a better position to decide whether or not the public interest would be served by the creation of new substantive legal liability." (quoting *Schweiker v. Chilicky,* 487 U.S. 412, 426-27 (1988) (internal quotation marks omitted)).

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States . . .

Second, there are two "special factors counseling hesitation" to the extension of a *Bivens* claim to the conduct alleged here: (1) the significant role that federal employment plays in this case; and (2) the substantial remedy available under FECA for the harm sustained. *See Hall*, 235 F.3d at 205 (citing *Bush v. Lucas*, 462 U.S. 367, 378-80 (1983)); *Holly*, 434 F.3d at 290, 295-96. Here, Richards's injuries were directly related to his employment and as a result he was entitled to receive the benefits Congress deemed appropriate for those injuries. *See Bush*, 462 U.S. at 378-80. In *Bush*, the Supreme Court refused to permit an implied *Bivens* remedy for a federal employee alleging a First Amendment violation, concluding that federal employment was a "special factor" which counseled against permitting a *Bivens* remedy because the plaintiff had alternative remedies under the Civil Service Commission ("CSC"). *Id.* In that regard, the Supreme Court found it important that Congress had specifically addressed the relationship between the Government and its employees within the context of granting remedies for those employees who felt they were wrongfully fired or held back. *Id.* at 381-88; *see also id.* at 368 ("Because such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy."). As the Court remarked in *Bush*, "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service. Not only has Congress developed considerable familiarity with balancing governmental efficiency and the rights of employees, but it also may

inform itself through fact finding procedures such as hearings that are not available to the courts." *Id.* at 389.

Here, the alternative remedy to a *Bivens* claim is under FECA, not the CSC, but *Bush's* logic applies equally to the available FECA remedy. Congress created FECA to provide compensation for workplace injuries and it is specifically designed to strike a balance between the federal employee's welfare and the government's sovereign immunity. *See Lockheed Aircraft, Corp. v. United States*, 460 U.S. 190, 193-94 (1983). In that regard, Congress made the judgment and determination that an employee should have immediate and fixed benefits, regardless of fault for the injury, in exchange for a limited right to sue the government. *Id.*

FECA also represents a "substantial remedy" available to Richards.[2] Nevertheless, Richards argues that FECA should not displace his *Bivens* claim because FECA cannot adequately compensate him for all of his injuries as a result of the lead poisoning. But complete compensation for all injuries is not a requirement in order to preclude a *Bivens* claim. In *Correctional Servs. Corp. v. Malesko,* 534 U.S. 61, 69 (2001), the Supreme Court explained that preclusion is appropriate "[s]o long as the plaintiff ha[s] an avenue for *some* redress . . ." (emphasis added). A statutory remedy does not need to provide "complete relief" to replace a *Bivens* action; it must only provide "meaningful safeguards or remedies for the rights of persons situated" in the plaintiff's position. *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988); *see also Bush*, 462 U.S. at 372, 388-90 (holding that a statutory remedy precluded *Bivens* even though

---

[2] For that reason, this case is unlike *Davis v. Passman*, where the Supreme Court permitted a *Bivens* action against a Congressman for violating an employee's Fifth Amendment Due Process rights in a circumstance where the plaintiff had no alternative remedy. 442 U.S. 228, 245-248 (1979); *see also id.* at 242 ("unless [constitutional] rights are to become merely precatory, the class of those litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights.").

Congress provided a less than complete remedy); *Holly*, 434 F.3d at 290 ("[N]either the absence

nor the incompleteness of [a statutory] scheme represents an invitation for a court to step in to

correct what it may perceive as an injustice toward an individual litigant.") In short, *"Bivens*

actions are not allowed 'when the design of a Government program suggests that Congress has

provided what it considers adequate remedial mechanism for constitutional violations . . . .'"

*Zimbleman v. Savage*, 228 F.3d 367, 370 (4th Cir. 2000) (quoting *Chilicky*, 487 U.S. at 423); *see*

*Bush*, 462 U.S. at 378. Tragic as this case is, Richards's remedy under FECA meets this

standard; and the Court must conclude that a *Bivens* remedy in this case is not available, even in

light of the severity of Richards's injuries and the egregiousness of the alleged conduct.

     Richards also argues that because of the Supremacy Clause of the U.S. Constitution,

FECA cannot preclude his constitutionally-based *Bivens* claim. (Pl.'s Br. 3) ("It is well-settled

that FECA does not preempt Constitutional claims."). But this position cannot be squared with

the decisions in *Bush* or *Chilicky. See Bush*, 462 U.S. at 385; *Chilicky*, 487 U.S. at 424-25

(dismissing plaintiff's Fifth Amendment Due Process *Bivens* claim based on an unconstitutional

denial of Social Security benefits because the plaintiffs had adequate opportunities to appeal the

denial and protect their rights.) As the Court observed in *Bush*, "[w]hen Congress provides an

alternative remedy, it may, of course, indicate its intent, by statutory language, by clear

legislative history, or perhaps even by the statutory remedy itself, that the Court's power [to

permit a *Bivens* action] should not be exercised." *Bush*, 462 U.S at 378.[3]  Given these

---

[3] Also instructive is the Supreme Court's opinion in *Chappell v. Wallace*, 462 U.S. 296 (1983).
In that case, the Supreme Court unanimously refused to create a *Bivens* remedy for military
personnel who alleged that their superior officers had violated constitutional rights. *Id.* at 305.
The Court explained: "The special nature of military life, the need for unhesitating and decisive
action by military officers and equally disciplined responses by enlisted personnel, would be
undermined by a judicially created remedy exposing officers to personal liability at the hands of
those they are charged to command . . ." *Id.* at 304. Richards is a civilian CIA employee and not

pronouncements, the Court cannot justify supplementing FECA's benefits scheme with a court-created damages remedy.

(2) The Privacy Act claim

The second issue is whether FECA also precludes Richards's Privacy Act claim.[4] The defendants argue that Richards must pursue his claim under FECA because the disclosure allegedly caused work-place injuries and FECA is the exclusive remedy for such work-place injuries. Assuming, without deciding, that Richards has stated a claim under the Privacy Act, the resolution of the defendants' motion to dismiss depends again on the scope and applicability of FECA's exclusivity clause.

A FECA claim is the appropriate remedy when a federal employee's "injuries are sustained while in the performance of his duty as a federal employee." *Wallace v. United States*, 669 F.2d 947, 951-52 (4th Cir. 1982); *see* 5 U.S.C. § 8102(a). An injury is sustained in "in the performance of duty" if the "injury arose out of and in the course of [] employment" and a "causal relationship exists between the employment itself, or the conditions under which it is to be performed, and the resultant injury." *Id.* at 954-55. Importantly, if an injury qualifies for FECA benefits, then FECA "is exclusive and instead of all other liability of the United States." 5

a member of the military, but the nature of his work—conducting weapons training in the Middle East—raises the same considerations that influenced the Court in *Chappell*.

[4] The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). To allege a successful Privacy Act disclosure claim, four elements must be present: (1) the disclosed information is a "record" contained within a "system of records"; (2) the agency disclosed the information; (3) the disclosure adversely affected the plaintiff; and (4) the disclosure was willful or intentional. *Quinn v. Stone*, 978 F.2d 126, 131 (3d. Cir. 1992); *Doe v. Herman*, No. 297CV00043, 1999 WL 1000212, at *8 (W.D. Va October 29, 1999).

U.S.C. § 8116(c). In other words, a "[f]ederal employees' injuries that are compensable under FECA cannot be compensated under other federal remedial statutes . . ." *Wallace*, 669 F.2d. at 951; *see also Borneman v. United States*, 213 F.3d 819, 829 n.3 (4th Cir. 2000).

Under FECA's remedial scheme, the Secretary of Labor has the exclusive authority to administer the statute, including the authority to determine whether an individual's injuries are eligible for FECA benefits in the first place. *Wallace*, 669 F.2d at 951.[5] Because of that exclusive authority, the Secretary's determination has the effect of determining whether the plaintiff can pursue remedies available under other statutes. If the Secretary decides that FECA is not applicable to the injury alleged, then the statute's exclusivity provision is not triggered and the plaintiff can pursue alternate remedies. Alternatively, if the Secretary decides that FECA is applicable, then the plaintiff can only seek redress under FECA's benefits regime.

In this case, as often occurs, the Court does not have the benefit of a definitive determination by the Secretary as to whether FECA applies to Richards's alleged Privacy Act injuries. Nevertheless, in the absence of such a determination, a court will first determine whether there is a "substantial question" that FECA applies; and if so, a court will not permit suit

---

[5] The statute reads in pertinent part:

The Secretary of Labor shall administer, and decide *all* questions arising under, this subchapter.

5 U.S.C. § 8145 (emphasis added).

The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

  (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
  (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b).

under any other statutory scheme, absent a determination by the Secretary that the plaintiff's claim is not covered by FECA. *See Wallace*, 669 F.2d at 951 (citing *Somma v. United States*, 283 F.2d 149, 151 (3d. Cir. 1960); *Daniels-Lumley v. United States*, 306 F.2d 769, 771 (D.C. Cir. 1962)). Applying that approach here, if there is a "substantial question" that Richards's injuries "were sustained while in the performance of his duty as a federal employee," then Richards cannot pursue his Privacy Act claim. *See Wallace*, 669 F.2d at 951-52.

In this case, the Court concludes that there is a "substantial question" whether Richards's injuries were "sustained while in performance of his duty as a federal employee." The disclosures and the subsequent harm came exclusively in the context of his employment at the CIA. The CIA possessed the wrongfully-disclosed information because Richards was a CIA employee. The injuries he alleges, "mental distress, emotional trauma, embarrassment, humiliation, a worsening of his depression, and lost or jeopardized present or future financial opportunities," arise almost entirely out of the CIA's disclosure of information about conditions he sustained as an employee to his *co-workers*, and not to the general public; and the discussion of his confidential medical condition occurred at his place of work. In short, the injury has a significant nexus with his status as a "federal employee" and there is a "causal relationship" between his injuries and his employment. *See Wallace,* 669 F.2d at 954-55. For these reasons, absent a determination by the Secretary of Labor that FECA does not cover Richards's Privacy Act claim, this Court has no jurisdiction to entertain the Privacy Act claim. The Court will therefore dismiss this claim without prejudice to allow Richards to pursue any administrative remedy he may have under FECA based on the events that give rise to his Privacy Act claim or to obtain a determination from the Secretary that such events do not give rise to a FECA claim.

## CONCLUSION

For the above reasons, the Court concludes that the exclusivity provisions of the Federal Employees Compensation Act preclude the *Bivens* claims, asserted in the First Cause of Action and the Third Cause of Action, and also Richards's claim under the Privacy Act asserted in the Second Cause of Action. The Court will therefore grant defendants' Motion to Dismiss.

The Court will enter an appropriate Order.

                              /s/
_____
                    Anthony J. Trenga
                    United States District Judge

Alexandria, Virginia
November 16, 2011

10